Dear Mr. Fontenot:
This office is in receipt of your request for an opinion concerning whether there exist any procedures to demolish abandoned buildings and to clean up unkempt property, and if so, whether a municipality can be held liable for damages arising from the demolition or clean up.
You have informed us of the following: The City of Simmesport has a number of dilapidated or abandoned buildings and unkempt properties that are an eyesore, or even worse, provide a breeding ground for rats and other rodents. It is feared that asbestos or other noxious substances may be stored on some of these sites as well. You, in your official capacity as Mayor, are concerned that the condition of these properties poses an immediate and dangerous threat to the health and safety of the community and therefore want to attack the problem.
In response to your first question, there is a least one procedure available to assist a city with dilapidated buildings. La. Const. Article VI § 7 (A) is entitled "Powers of Other Local Governmental Subdivisions" and provides, in pertinent part, that . . . "the local governmental subdivision shall have the powers authorized by this constitution or by law."
The City of Simmesport is a Lawarson Act municipality, and as such, is governed by La. R.S. 33:361 et seq. La. R.S. 33:361
(A) entitled "Municipal Powers" grants a municipality the authority "[t]o exercise any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law." In addition to the authority granted by the constitution and state statute, the Louisiana Supreme Court has recognized that "a municipality in exercise of its police power may, without compensation, destroy a building that is a menace to public safety or health. . . ." Housemaster Corp. v. City of Kenner,374 So.2d 1240 (La. 1979).
La. R.S. 33:4761, et seq. specifically deal with the demolition of dilapidated buildings. This statute is codified under Chapter 14 of Title 33 which pertains to the "Exercise of Police Power." The Legislature placed La. R.S. 33:4761, et seq. under Subpart D. and entitled it "Removal of Dangerous Structures in Municipalities Generally." La. R.S. 33:4761 provides that "[t]he governing authority of any municipality, the city of New Orleans and the city of Shreveport excepted, may condemn and cause to be demolished or removed any building or structure within the municipality when it is in a dilapidated and dangerous condition which endangers the public welfare." Thus, if in fact the building is "in a dilapidated and dangerous condition which endangers the public welfare," the City of Simmesport may then proceed to demolish it as provided for in La. R.S. 33:4762, et seq.
The procedure as outlined in La. R.S. 33:4762, requires an engineering report to support a show cause order for demolition. The owner must be afforded an opportunity to demonstrate at a hearing that repairs and renovation are possible. If the owner fails to show that his repair or renovation plan is adequate, the mayor may proceed with the demolition of the building. Other pertinent sections of the revised statutes have been attached hereto for your information.
Notwithstanding the City's authority to exercise its police power under these circumstances, the City's power to act is not unlimited. La. R.S. 33:4761, et seq. establish the procedural and formal prerequisites to demolition. The Supreme Court ruled in 1979 that the failure to meet the statutory requirements precisely vitiated a demolition resolution. Housemaster Corp. v.City of Kenner, 374 So.2d 1240 (La. 1979). The Court, noting that it is "axiomatic that procedural provisions and substantive restraints [on the police power] must be strictly construed," held that the proper owner had not been notified, and as a consequence, further opportunity must be afforded the proper party to present his case against demolition to avoid unnecessary property loss. Id. at 1242-43.
Your second question focuses on statutory procedures for tidying up unkempt property. Unkempt is defined in Webster's NewWorld Dictionary, Fourth Edition, as "tangled, disheveled; not tidy; slovenly." Thus, such property would likely include lots with trash, debris, old cars on cinder blocks, noxious or uncut weeds and grass and any other deleterious, unsafe or unsanitary condition, to name a few examples.
La. R.S. 33:5062 provides that a municipality "having a population of less than four hundred thousand inhabitants may enact ordinances requiring property be maintained in a safe and sanitary condition. . . ." This language would seem to embrace the examples listed above.
The procedure first requires the passage of an ordinance mandating the removal of unsafe or unsanitary conditions. Pursuant to this ordinance, the owner of the offending lot, place or area must be given notice of the City's intention to remove the unsafe or unsanitary condition and afforded an opportunity to do the work himself. If the owner fails to remedy the situation within the grace period, the City may commence to clean up the area. See the enclosed copy of La. R.S. 33:5062.
Your third and final inquiry deals with whether a municipality can be held liable for damages resulting from the demolition of a building or other structure or the clean up of unkempt property. In demolishing a building or cleaning unkempt property, the municipality could have exposure to liability arising out of the demolition or clean up. However, La. R.S.33:4765 specifically exempts a municipality or mayor from liability to an owner for damages resulting from the demolition of a building, structure or public nuisance.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, please do not hesitate to contact us.
Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ________________________ Christopner D. Mattchett Assistant Attorney General